FILED

### IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION   2013 FEB 14   PM 12: 03

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FL
JACKSONVILLE FLORIDA

| | |
|---|---|
| THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, JACKSONVILLE BRANCH, <br><br> JACKSONVILLE BROTHERHOOD OF FIREFIGHTERS, A CHAPTER OF THE INTERNATIONAL ASSOCIATION OF AFRICAN-AMERICAN PROFESSIONAL FIRE FIGHTERS, <br><br> ON BEHALF OF THEMSELVES AND THE CLASS THEY REPRESENT, <br><br>     Plaintiffs, <br><br>   v. <br><br> CONSOLIDATED CITY OF JACKSONVILLE, <br><br>     Defendant. | CIVIL ACTION NO. <br> 3:13-cv-161-J-99MMH-MCR |

Plaintiffs the National Association for the Advancement of Colored People, Jacksonville Branch ("NAACP") and the Jacksonville Brotherhood of Firefighters, a Chapter of the International Association of African-American Professional Fire Fighters ("JBOF"), individually and on behalf of all others similarly situated, allege, upon personal knowledge as to themselves and upon information and belief as to other matters, as follows:

## SUMMARY OF THE CLAIMS

1.    This action is brought on behalf of the above-named plaintiffs and a class of aspiring, present, and former Black firefighters (hereinafter "Plaintiffs") for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). As set forth more fully below, the parties allege that Defendant, the Consolidated City of Jacksonville

("Jacksonville"), through its Fire and Rescue Department ("JFRD"), has used and continues to use recruitment, hiring, assignment, and transfer policies and practices that have a disparate impact on Black candidates and Black firefighters, that are not job-related or consistent with business necessity, and that do not otherwise meet the requirements of Title VII. The parties further allege that Defendant Jacksonville has permitted the creation of a racially hostile work environment in violation of Title VII.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction under 28 U.S.C. § 1331 and § 1343(a)(4) as this claim arose under the Constitution, laws or treaties of the United States, and under § 706 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5, *et seq.*

3.      The employment actions alleged to be unlawful in this complaint were all committed within the jurisdiction of the United States District Court for the Middle District of Florida.

## PARTIES

4.      Plaintiff NAACP is an organization representing the interests of minority groups in Jacksonville, Florida. The mission of the NAACP is to eliminate racial prejudice and to end racial discrimination through the democratic process. The NAACP's members include aspiring Black firefighters who have either been denied employment or dissuaded from applying as a result of the Jacksonville Fire and Rescue Department's ("JFRD") discriminatory hiring process. Its members also include present and former firefighters who are or were subjected to discriminatory assignment and transfer policies and who are or were subject to a racially hostile environment by JFRD. On July 30, 2008, the NAACP filed a charge of discrimination on its own behalf, on behalf of its individual members, and on behalf of a class of aspiring, actual, and

2

former Black firefighters who have been, and continue to be harmed by JFRD's discriminatory practices.

5.     Plaintiff JBOF is an organization representing the interests of minority firefighters and aspiring minority firefighters in Jacksonville. The objectives of the Brotherhood include encouraging Blacks to consider a career in firefighting, ensuring a fair and equitable working environment for Black firefighters, and advancing Blacks to the upper ranks of the JFRD. Because of the race discrimination in the JFRD's recruitment and hiring process, the Brotherhood's membership and membership dues have been suppressed. On July 30, 2008, the JBOF filed a charge of discrimination on its own behalf, on behalf of its individual members, and on behalf of a class of aspiring, actual, and former Black firefighters who have been, and continue to be harmed by JFRD's discriminatory practices.

6.     Defendant Jacksonville is a municipal government and political subdivision created pursuant to the laws of the State of Florida and is located in this judicial district.

7.     Defendant Jacksonville is a person within the meaning of 42 U.S.C. § 2000e(a) and an employer within the meaning of 42 U.S.C. § 2000e(b).

8.     Defendant Jacksonville maintains a fire department, Jacksonville Fire and Rescue Department ("JFRD").

9.     JFRD employs more than 1,200 uniformed firefighters in all ranks.

## PROCEDURAL AND ADMINISTRATIVE REQUIREMENTS

10.     Plaintiffs have satisfied the procedural and administrative requirements for proceeding under Title VII. On July 30, 2008, Plaintiffs NAACP and JBOF filed timely written Charges of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"). Each Charge of Discrimination explicitly placed Defendant on notice of class-wide

allegations of discrimination on account of race resulting from Defendant's recruitment, hiring

and promotion processes, and assignment and transfer policies, which "have a disparate impact

upon African-Americans." Each Charge of Discrimination also alleged the creation of a hostile

work environment for Black firefighters. On August 3, 2012, the DOJ issued a right to sue letter

to the NAACP. Plaintiff NAACP negotiated a tolling of the 90-day deadline with Defendant

Jacksonville, which agreement was signed on October 24, 2012, and gave Plaintiff until January

15, 2013 to bring a claim pursuant to the right to sue letter. An addendum to the agreement

extended the tolling deadline to February 15, 2013. Plaintiff JBOF received a right to sue letter

from the EEOC on December 3, 2012, and the 90 day deadline for filing ends on March 1, 2013.

Plaintiffs commenced this action on February 14, 2013.

## BACKGROUND

11.    In 1971, the JFRD became subject to a consent decree pursuant to a class action

filed in the Unites States District Court for the Middle District of Florida, Jacksonville Division,

*Coffey v. Braddy*, Case No. 3:71-cv-00044. This action, filed by private individuals against the

JFRD, focused on discrimination in hiring of entry-level firefighters. In 1984, the Court amended

the consent decree to require 1:1 hiring until the percentage of Black firefighters equaled the

percentage of Blacks in the local population. In 1992, the City unilaterally ceased 1:1 hiring; at

the time, Black firefighters comprised 27% of the force.[1] In 2008, when the Plaintiffs' EEOC

Charges of Discrimination were filed, the percentage of Black firefighters had dropped to 20% of

the force, and many of those firefighters were close to retirement. While the percentage of Black

firefighters may have risen since 2008, on information and belief, 38 Black firefighters will be

---

[1]     The City of Jacksonville never moved to be relieved of its obligations under the amended consent decree.

retiring at the end of 2013. The percentage of Black firefighters remains well below the percentage of Blacks in the local population, which is 30.7%.[2]

12.     On February 17, 2006, two African-American firefighters employed by the JFRD opened their lockers to find nooses hanging inside.[3] This act of severe racial intimidation precipitated an investigation by the Jacksonville Human Rights Commission into the broad discriminatory practices and racially hostile work environment at the JFRD.  In August 2006, the Commission issued a report finding a widespread pattern and practice of discrimination against African-Americans in the JFRD.[4]

13.     On July 30, 2008, after two years without meaningful corrective action by the JFRD, the NAACP and JBOF filed charges with the EEOC, alleging discrimination in hiring, promotion, and terms and conditions of work by the JFRD. On June 5, 2009, the EEOC issued a Letter of Determination finding that the JFRD engaged in the alleged discrimination and ordered the charge to the conciliation stage. On July 3, 2009, attorneys in the *Coffey v. Braddy*, Case No. 3:71-cv-00044, filed an emergency motion against the City of Jacksonville asking the Court to stay all hiring and promotion procedures within the JFRD. (Doc. No. 6) The Court denied the motion, but ordered the parties to enter into mediation before Senior United States District Judge Harvey E. Schlesinger.  (Doc. No. 88)  The NAACP, JBOF, and the EEOC agreed to stay the

---

[2]     U.S. Census Bureau, State & County Quick Facts, Revised, January 10, 2013.

[3]     In *Vance v. Southern Bell Tel. & Tel. Co.*, 983 F.2d 1573, 1583 (11th Cir. 1993), the Eleventh Circuit established the particularly severe discrimination and traumatic history underlying the use of nooses, stating "[t]he noose in this context is a symbol not just of racial discrimination or of disapproval, but of terror. Those of us for whom a particular symbol is just that—a symbol—may have difficulty appreciating the very real, very significant fear that such symbols inspire in those to whom they are targeted. No less than the swastika or the Klansman's hood, the noose is intended to arouse fear." 983 F.2d at 1583.

[4]     Jacksonville Human Rights Commission, Report to the Mayor on the Jacksonville Fire and Rescue Department, City of Jacksonville, August 8, 2006 ("HRC Report").

EEOC conciliation process in order to participate in the mediation. The Department of Justice, Civil Rights Division ("DOJ") also participated in the mediation sessions, during which proposals were discussed to resolve Plaintiffs' claims that JFRD engaged in discriminatory practices in connection with its hiring, transfer, assignment and promotion processes, and that JFRD subjected Plaintiffs' members to a hostile work environment.

14.     The mediation efforts continued for more than three years and the claims of discrimination have not been resolved. On April 23, 2012, as a result of the failure to reach agreement on the promotion claims, the DOJ filed suit against the City of Jacksonville, alleging a pattern or practice of race discrimination in promotions in violation of Title VII. *United States of America v. Consolidated City of Jacksonville, et. al.* 3:12-cv-451. On August 16, 2012, the NAACP and the JBOF timely filed a motion to intervene in that action, so that they could pursue their claim that the JFRD has engaged in discriminatory promotions practices. (Doc. 28) That motion, which was unopposed by DOJ and the City of Jacksonville, has been fully briefed and remains pending before the Court.

15.     Plaintiffs file the present action, alleging that JFRD's hiring, assignment, and transfer practices and procedures have a disparate impact on Black candidates, are not job-related or consistent with business necessity for the positions in question, and fail to otherwise meet the requirements of Title VII. Plaintiffs further allege a racially discriminatory hostile work environment.

## CLASS DEFINITION

16.     Plaintiffs bring this case as a class action under Federal Rules of Civil Procedure

23 (a)(2) and (b)(2), on behalf of the following class:

> All Black candidates or aspiring Black candidates for employment who
> were denied employment or dissuaded from applying by JFRD's
> discriminatory hiring process and all present or past Black firefighters who
> have been subject to a hostile work environment, and/or discriminatory
> assignment and transfer policies, from July 30, 2006 to the present, two
> years prior to the sworn filing of the EEOC complaint.

## STATEMENT OF THE CLAIM

### Recruitment and Hiring

17.     Defendant Jacksonville, through the JFRD, has maintained and continues to

maintain a hiring process that results in a disparate and adverse impact on Black applicants and

potential applicants. The hiring process is not capable of separation.

18.     Defendant Jacksonville, through the JFRD, requires applicants to take and pass a

First Responder course, a "minimum standards" course, and an Emergency Medical Technician

(EMT) course prior to being eligible to apply for a firefighter position at JFRD.

19.     Requiring candidates to obtain certifications prior to hire is a significant barrier to

minority employment and has a disparate impact on Black applicants and potential applicants.

The Florida State College at Jacksonville ("FSCJ")[5], the only location where the courses are

offered, is geographically removed from the historically Black communities of Jacksonville. In

order to even apply for a position as a firefighter, an individual must invest up to seven months

and $2,900 on the required courses. Moreover, the structure of the required coursework is such

---

[5]     Until 2009, FSCJ was known as the Florida Community College at Jacksonville ("FCCJ").

that potential applicants are not eligible for federal student loans.[6] These requirements disproportionately screen out minority candidates because 31.1% of Blacks in Jacksonville live below the poverty line, compared to 18.3% of the general population of Jacksonville.[7] Further Black applicants are unwilling to expend the high costs for these courses only to apply for a job they believe they have little chance of obtaining.

20.    In its August 2006 report, the Jacksonville Human Rights Commission disclosed that during the two years preceding the report, Black males comprised 13% of the students in the FCCJ Fire and Rescue Certification Program[8], compared to 21% in the male workforce for Duval County. In those same two years, the proportion of Black participants in the FCCJ Fire and Rescue Program was one-third less than the proportion employed by the JFRD. If this trend continues, the proportion of minority firefighters will decrease in the future.

21.    Following the filing of Plaintiffs' EEOC charges and for several years thereafter, Defendant Jacksonville established a fire cadet program to train persons interested in firefighting careers. Those accepted into the program were paid a reduced firefighter salary and paid for their own coursework to obtain the certification required for hire. If they successfully completed the program and certification they were hired as firefighters. This program included a significant percentage of minority cadets.  In 2010, in spite of the imminent loss through retirement of many Black firefighters, Defendant cancelled the cadet program for budgetary reasons and has not reinstituted the program.

---

[6]    The current 450-hour program would need to be expanded to 600 hours in order for students to be eligible for low-interest federal student loan programs. HRC Report at 24.

[7]    U.S. Census Bureau, 2011 American Community Survey.

[8]    Now known as the Fire Fighter Workforce Certificate in the Florida Coast Career Tech, a division of Florida State College at Jacksonville (FSCJ).

22. Instead, Defendant established a magnet high school with a program specifically designed to train prospective firefighters. The instructors in the program, however, are not properly certified to teach the courses required prior to applying for a position with JFRD. Therefore, graduates of the high school must still attend the FSCJ Fire and Rescue Certification Program.

23. Defendant Jacksonville, through the JFRD, requires qualified candidates to pass a battery of tests and screenings, including a driver's license screening, a polygraph test, a criminal background check, and an oral interview, some or all of which tests and screenings have a disparate impact on Blacks and are not job related or justified by business necessity.

24. Defendant Jacksonville, through the JFRD, grants the Fire Chief and his staff unlimited discretion in the selection of qualified candidates.

25. Granting the Fire Chief and his staff unlimited discretion in the selection of qualified candidates is a significant barrier to minority employment. Unlimited discretion and subjective decision-making by primarily White officers allows bias to creep into the selection process. Additionally, anecdotal evidence suggests that family and friends of mostly White incumbent and retired firefighters, especially those with ties to the Jacksonville Association of Fire Fighters, Local 122 ("the Union"), are given favorable consideration in the selection process.

26. A summary of hiring data provided by the JFRD in 2007 shows that from July 2000 to July 2006, the JFRD hired 435 Caucasian applicants compared to only 64 Black applicants. During that six year period, only 15% of JFRD hires were Black. When these numbers are broken down by hiring class, the disparity is even more apparent: on April 24, 2006, only two members of a new class of 25 firefighters were Black; on May 2, 2005, only one

9

member of a new class of 23 firefighters was Black; and on August 23, 2004, no members of a new class of 20 firefighters were Black (or any other minority).

27.     The discriminatory hiring practices of Defendant Jacksonville, through the JFRD, have caused a significant decrease in the number of Black firefighters serving the City. On information and belief, only 20% of firefighters are Black, and given that a large number of Black firefighters hired under the consent decree are approaching retirement, the situation will become significantly worse in the next several years.

### Assignments

28.     Defendant Jacksonville, through the JFRD, has maintained and continues to maintain a practice and policy of assignments that results in a disparate and adverse impact on Black firefighters.

29.     Defendant Jacksonville, through the JFRD, disproportionately assigns Black firefighters to less desirable positions. In general, the Fire Operations/Suppression Division is perceived to be a more desirable assignment than either the Rescue & Communications Division or the Fire Prevention Division. As of March 31, 2006, Blacks represented 72% (17 out of 24) of Fire Prevention officers, 21% (44 out of 207) of Rescue & Communications officers, and only 18% (158 out of 869) of Fire Operations/Suppression. These percentages have remained fairly constant up to the present.

30.     According to the HRC Report, Rescue & Communications Units make up to 400 runs per month, and the frequency of runs makes this division less desirable for some. In addition, "an assignment to Fire Prevention is not considered a positive career move." HRC Report at 18.

31.    Exacerbating the disparity in assignments is the fact that the Fire Operations/Suppression Unit does not advertise openings in its Unit.

## Hostile Work Environment

32.    Defendant Jacksonville, through the JFRD, tolerates a workplace environment suffused with racial harassment and hostility sufficiently severe and pervasive to create a racially hostile work environment in violation of Title VII.

33.    Black firefighters experience numerous and ongoing acts of racial hostility and discrimination, including the placement of nooses in their lockers, the use of racial epithets in the workplace, and anonymous threats of physical violence.

34.    On February 17, 2006, two Black firefighters opened their lockers to find nooses hanging inside. This incident precipitated an investigation of the JFRD by the Jacksonville Human Rights Commission and resulted in the HRC Report. The Report found that "[t]here is a perception among focus group participants that the environment is returning to the past levels of isolation, segregation and exclusion, which raises concerns of threats, fear and potential violence... African Americans still report feeling isolated in the workplace and then threatened when going on emergency calls because of racially-biased comments like 'I don't want that "N" in my house." HRC Report at 19.

35.    Due to the hostile work environment condoned by Defendant Jacksonville, through the JFRD, many Black firefighters fear for their physical safety while in the station houses, in dangerous emergency situations, and off duty with their families.

36.    This fear, moreover, has caused and continues to cause some Black firefighters to request transfers to predominantly Black station houses, thus causing the *de facto* segregation of many station houses.

11

## CLASS ACTION ALLEGATIONS

37.     The Class includes all Black candidates or aspiring Black candidates for employment who were denied employment or dissuaded from applying by JFRD's discriminatory hiring process and all present or past Black firefighters who have been subject to a hostile work environment, and/or discriminatory assignment and transfer policies, from July 30, 2006 to the present.

38.     The members of the class are so numerous that joinder of all of them is impracticable.

39.     There are questions of law and fact in common to each class that predominate over any questions affecting only individual members. Common questions include but are not limited to whether:

(1)     Defendant's hiring and recruitment policies or practices had and continue to have a discriminatory disparate impact on Black applicants;

(2)     Defendant's hiring and recruitment policies or practice are job-related and consistent with business necessity;

(3)     less discriminatory hiring and recruitment policies and practices exist that would meet Defendant's legitimate business needs;

(4)     Defendant's assignment and transfer policies or practices had and continue to have a discriminatory disparate impact on Black employees;

(5)     Defendant's assignment and transfer policies or practices are job-related and consistent with business necessity;

(6)     less discriminatory assignment and transfer policies and practices exist that would meet Defendant's legitimate business needs;

(7)     Defendant has allowed to be created workplace conditions sufficiently severe and pervasive so as to constitute a racially hostile work environment in violation of Title VII;

(8)     the workplace conditions of the JFRD, including the placement of nooses in Black firefighters' lockers, the use of racial epithets, and anonymous threats of physical violence targeted at Black firefighters, created and continue to constitute a work environment that would be intimidating, hostile, or offensive to Black firefighters and to reasonable people;

(9)     Defendant failed to take prompt and appropriate corrective action; and

(10)    what equitable and injunctive relief for the Class is warranted.

40.     Plaintiffs' claims are typical of the Class. The JBOF and NAACP include within their membership aspiring Black firefighters who have applied for and been denied employment or been dissuaded from applying for firefighting positions with the JFRD by Defendant's discriminatory practices.

41.     The JBOF and NAACP also include within their membership Black firefighters who have been employed by the JFRD at some point since July 30, 2006, and while employed by the JFRD have been assigned to a less desirable division, have been harassed by racially hostile work conditions, or have been disciplined or involuntarily transferred.

42.     Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class. Plaintiffs have no conflict with one another or any class member. Plaintiffs are committed to the goal of having the JFRD revise its hiring, transfer, and assignment policies and practices to eliminate the discriminatory impact these policies and practices have on aspiring and current Black firefighters. Plaintiffs are further committed to the goal of having the JFRD correct and prevent the unlawful racial harassment pervading its organization and implement effective grievance processes and diversity training.

43.     Plaintiffs have retained counsel competent and experienced in complex class actions, employment discrimination litigation, and the intersection thereof.

44.     Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendant has acted and/or refused to act on grounds generally applicable to the Class, making appropriate declaratory and injunctive relief with respect to Plaintiffs and the Class as a whole. The Class members are entitled to injunctive relief to end Defendant's common, uniform, unfair, and discriminatory policies and/or practices.

## CLAIM FOR RELIEF

### (Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*)

45.     Plaintiffs incorporate by reference the allegations in all preceding paragraphs.

46.     Plaintiffs bring this claim on their own behalf and on behalf of the Class.

47.     Defendant Jacksonville's employment policies and practices have harmed and continue to harm Plaintiffs and the Class, and constitute unlawful discrimination on the basis of race, ethnicity, and/or color in violation of 42 U.S.C. §§ 2000e *et seq.*

48.     Defendant Jacksonville has pursued employment practices that have resulted in a disparate impact on Black candidates and Black firefighters, are not job-related for the positions in question and are not consistent with business necessity, and otherwise do not meet the requirements of 42 U.S.C. §§ 2000e *et seq.* Defendant Jacksonville's discriminatory practices include but are not limited to:

    a.     requiring applicants to take and pass a First Responder course, a "minimum standards" course, and an Emergency Medical Technician (EMT) course, where such time- and cost-intensive certification requirements result in a disparate impact on Black candidates, and are not job-related or consistent with business necessity. Even if Defendant's policy and practice of requiring extensive certification to apply for firefighting positions with the JFRD is job-related or

14

could be justified by business necessity, a less discriminatory alternative exists that would equally serve any legitimate purpose;

b.    requiring applicants to pass a battery of tests and screenings, including a driver's license screening, a polygraph test, a criminal background check, and an oral interview, where such tests result in a disparate impact on Black candidates, and are not job-related or consistent with business necessity. Even if Defendant's policy and practice of requiring extensive tests and checks in applying for firefighting positions with the JFRD is job-related or could be justified by business necessity, a less discriminatory alternative exists that would equally serve any legitimate purpose;

c.    granting the Fire Chief and his staff unlimited discretion in the selection of qualified candidates, where such discretion results in a disparate impact on Black candidates and is not job-related or consistent with business necessity. Even if Defendant's policy and practice of vesting unlimited hiring discretion in the Fire Chief and his staff could be justified by business necessity, a less discriminatory alternative exists that would equally serve any legitimate purpose; and

d.    assigning Black firefighters to the less favored Fire Prevention and Rescue & Communications Divisions of the JFRD, where such assignments result in a disparate impact on Black candidates, are not job-related or consistent with business necessity. Even if Defendant's practice of disproportionately assigning Black firefighters to less favored divisions and station houses could be justified by business necessity, a less discriminatory alternative exists that would equally serve any legitimate purpose.

15

49.     Defendant Jacksonville has permitted the creation of a racially hostile work environment in violation of Title VII, 42 U.S.C. § 2000e-2(a), through discriminatory intimidation, ridicule, and insult sufficiently severe and pervasive to alter the conditions of employment and create an abusive working environment for Black firefighters. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S. Ct. 367, 126 L.Ed.2d 295 (1993). Defendant Jacksonville's racial harassment and discriminatory environment includes but is not limited to:

a.     numerous and ongoing acts of racial hostility and discrimination including the placement of nooses in the lockers of Black firefighters, the use of racial epithets, and anonymous threats of physical violence, where Defendant knew or should have known about the harassment and failed to take prompt and appropriate corrective action; and

b.     more severe discipline of Black firefighters than White firefighters, where Black firefighters are disciplined at more than triple the rate of White firefighters, and where Defendant knew or should have known about these altered conditions of employment and failed to take prompt and appropriate corrective action.

50.     The practices of Defendant Jacksonville described in paragraphs 1 through 44, *supra*, constitute employment practices that discriminate against Blacks with respect to recruitment, hiring, compensation, terms, conditions, or privileges of employment, because of their race; and deprive or tend to deprive Blacks of employment opportunities because of their race, in violation of Section 703 of Title VII, 42 U.S.C. § 2000e. These practices are of such a nature as to deny the full exercise of the rights secured by Title VII. Unless restrained by order of this Court, Defendant Jacksonville will continue to pursue practices that are the same or similar to those alleged in this Complaint.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs and the Class pray for relief as follows:

51.     Certification of the case as a class action on behalf of the proposed Class;

52.     Designation of Representative Plaintiffs the National Association for the Advancement of Colored People (NAACP), Jacksonville Branch, and the Jacksonville Brotherhood of Firefighters (JBOF) as representatives of themselves and on behalf of the Class;

53.     Designation of Representative Plaintiffs' counsel of record as Class counsel;

54.     A declaratory judgment that the practices complained of herein are unlawful and violate Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et *seq.*;

55.     A preliminary and permanent injunction against Defendant and all officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful policies, practices, customs and usages set forth herein, consistent with the less discriminatory alternative described above, and specifically from:

        a.     failing or refusing to hire Black candidates on the same basis as white candidates;

        b.     requiring applicants to obtain certification and pass a battery of tests and screenings, where such certification and tests result in a disparate impact on Black candidates, are not job-related or consistent with business necessity and do not otherwise meet the requirements of Section 703(k) of Title VII, 42 U.S.C. § 2000e-2(k);

        c.     granting the Fire Chief and his staff unlimited discretion in the selection of qualified candidates, where such discretion results in a disparate impact on Black candidates, is not job-related or consistent with business necessity

and does not otherwise meet the requirements of Section 703(k) of Title VII, 42 U.S.C. § 2000e-2(k);

d.   assigning Black firefighters to the less favored Fire Prevention and Rescue & Communications Divisions of the JFRD, where such assignments result in a disparate impact on Black candidates, are not job-related or consistent with business necessity and does not otherwise meet the requirements of Section 703(k) of Title VII, 42 U.S.C. § 2000e-2(k);

e.   permitting a racially hostile work environment through discriminatory intimidation, ridicule, and insult sufficiently severe and pervasive to alter the conditions of employment and create an abusive working environment for Black firefighters in violation of Title VII, 42 U.S.C. § 2000e-2(a);

g.   refusing to take appropriate action to correct the present effects of its discriminatory practices; and

h.   failing or refusing to take other non-discriminatory measures to overcome the effects of its discriminatory practices;

56.   An order that Defendant institute and carry out policies, practices, and programs that provide equal employment opportunities for all eligible Class members, and that Defendant eradicate the effects of past and present unlawful employment practices;

57.   Back pay to those class members who should have been but were not hired.

58.   Costs incurred herein, including reasonable attorneys' fees to the extent allowable by law, including but not limited to 42 U.S.C. § 2000e-2(k);

59.   Pre-judgment and post-judgment interest, as provided by law; and

60. Such other and further equitable relief as this Court deems necessary, just and

proper.


Date:   February 14, 2013

Respectfully submitted,

The Law Office of Kirsten Doolittle, P.A.

s/Kirsten Doolittle
KIRSTEN DOOLITTLE
The Elks Building
207 North Laura Street, Suite 240
Jacksonville, FL 32202
Telephone: (904) 551-7775
Facsimile: (813) 274-6200
Email: kd@kdlawoffice.com

Lawyers' Committee for Civil
Rights Under Law

s/Jane Dolkart
JANE DOLKART
1401 New York Avenue, NW
Suite 400
Washington, D.C. 20005
Telephone: (202) 662-8391
Facsimile: (202) 783-0857
Email: jdolkart@lawyerscommittee.org
*Pending admission by the Court

RAY MCCLAIN
1401 New York Avenue, NW
Suite 400
Washington, D.C. 20005
Telephone: (202) 662-8342
Facsimile: (202) 783-0857
Email: rmcclain@lawyerscommittee.org
*Pending admission by the Court

Counsel for Plaintiffs

19